All right, the last argued case is Brain Life, LLC versus Alexa, Inc. Case number 13-1239. All right, Mr. Adams, as I understand it, you do not wish to reserve any rebuttal? Correct. Okay. May it please the court. I'd like to confine my remarks to the question of whether there is one or two or more separate causes of action in this case. And by demonstrating that there is more than one, defeating the notion that the case could be decided on a claim-splitting basis, there is more than one claim, and the idea of claim-splitting just falls apart. So what I will try to demonstrate for you is that there are more than one cause of action, notwithstanding that there is one patent. The lower court in this case decided the case primarily on the Nystrom case, but it then went on to stages that it could not find a case in point. Neither have we, neither has Alexa. In other words, a case in which, in one patent, there was method claims and also apparatus claims. Let me give you a hypothetical. What if you had a contract and there were two provisions of the contract that you believed had been breached, and you decided, well, the one's so clear, I'm just going to go with that one, and you get to judgment. Could you then sue on that same contract later? I don't think so, Your Honor. I think, again, as I'll explain, is the same claim analysis is a transaction analysis, and that, in turn, according to the restatement of judgment, says you have to look at the nucleus of facts. In order to answer your question definitively, I'd have to know what are the two portions of the contract, one of which was asserted in one case and then attempted to be asserted in a later case. You have to look at the facts itself. Is the conduct, ultimately, that you would assert violates the method claim, the same conduct that effectively would violate the other claims? Absolutely not. I believe that the conduct that violates an apparatus claim goes to the questions are the design, the function that it performs. Are all of the, in the case of the apparatus claim, are all of the elements of the claim found in this machine? If it is, then that is determinative. Doesn't the method claim describe the use of the machine? In this particular case, yes, that is the case, but the method claim, of course, is, we are arguing, is not being performed by electa. The method is being performed by the customers of electa. In other words, we have a different party, which is one of the facts that has to be considered in whether or not you have different causes of action. But, if I may come back, in the Nystrom case, the court said you don't have this fact situation. Well, our assertion is that there are two types of causes of action in this case, and in general, where the patent has both method and apparatus claims. One is, and I think Judge Plager, in the TransClean case, referred to this and said he didn't have to decide the question, but he said, is making and selling one cause of action and using another cause of action? And we will say yes, and I will try to demonstrate that for you by pointing out the factors that are taken into account in the transaction analysis. Well, but if all you're doing, let's suppose you're just charging, let's make it really simple. Making is the charge, and it's making a particular machine. Yes. The accused infringer has made a single machine, and by analogy to Judge O'Malley's question, the plaintiff comes in and says, well, I have apparatus claims, and I have method claims. I'm going to go with the apparatus claims, and I'm going to dismiss the method claims. Sues and loses on the apparatus claims, and then says, well, I think I had my pocket picked. I'm going to bring another suit, and brings another suit on the method claims against the same single device, against the maker of the device who was sued in the first case. You would agree, would you not, that that is classic claim splitting, and you can't do it? Yes, I would agree with that. Right. But again, the salient point is that you have the same defendant, you have the same machine, and you have the same party. Right. So when you go to approve the method claim, you do have a different set of facts that you have to prove. Well, you did in my example. I mean, you may have had to prove that if you were talking about using, for example, you might have to prove that the person who made the machine and sold it to others induced others to use it in a particular way. But still, with respect to the first party, you'd be foreclosed, would you not? You couldn't come in with a new theory of method claims as opposed to apparatus claims. Well, I don't think it's a different theory, though. I mean, that is the issue, is we're talking about theories. It's the same single machine, right? Yes, it is definitely the same machine. But then let's look at what you have to prove. In the one cases, you have to prove that the machine was designed in a certain way that infringed upon the apparatus claims. Although the machine is capable of practicing the method, it may not. And I think that's just the case here. If this machine is sold to the hospitals, we don't know whether the hospital, at this point, we don't know whether the hospitals are actually using each of the steps. And this court has said again and again, is in method claims, you must prove that every step of the method is actually used. Well, that's going to be your obligation to prove. I mean, if you can't prove it, then you lose on the merits. So you have to, by hypothesis, say that, and what's more, we assert that that's the way it's being used. That's your theory of infringement on the method claims, I assume. Yes, of course. Right. But I still don't see that. I mean, I don't see that that's the same cause of action. If you take the machine and sell it to someone else and then sue that person for using the machine, there's a different fact situation. Did you have the opportunity? Let's look at this case. Did you have the opportunity to assert those method claims in the prior case? I think we had the opportunity, but we couldn't find the evidence. It was a rather contentious discovery in the case. The defendant, of course, is in Sweden. We were told that most of the records were there. We simply, at one point, decided that, no, we couldn't prove inducement, and so we gave it up. Of what relevance to your argument is your contention that the method claims are actually broader than the system claims? Well, in this particular case, yes. Well, of course, there's no question that the method claims are now broader, because in the first case, well, let me step back a bit. In the lower court in the first case, everyone agreed that the claim had means plus function. The lower court decided that one limitation, which is critical, called the conversion of images, that it could be done either by digital to analog or digital to digital. It came up to this court, and this court said, no, there is insufficient linking between the corresponding structure and the specification to that element of the claim, and consequently, the claim only covers analog to digital. Well, Electa was using digital to digital, as was most everyone else. The patent goes back into the late 80s, so analog and digital translation was more common than it is, even at the time the suit was tried in 2000. I want to go into something before we end, and that is the dismissal without prejudice discussion. Because you argue that dismissal without prejudice in 684 preserved the rights to assert the claim. To the method claims, yes. Isn't it confusing a cause of action with a patent claim? No, I don't think so. The restatement of judgment says that there are exceptions to the race judicata rules, and while it speaks to the more general sentences, when a judge decides that a cause of action should be dismissed for lack of prosecution, then that action is taken out of the case. It literally says it's without prejudice. You may bring this case in any court at any time in the future. What Electa argues is that that was only true until the final judgment happened. Then somehow the rule 41A right disappeared. Are your rights in this case any different with respect to the dismissal without prejudice than they would have been if you had never brought the method claims in the first case at all? Yes. How? Well, because I think that the court segregated out those claims from what the complaint originally stated. Once you get that, it's – I'm sorry. Why does that matter? Well, because it's literally saying you have, without prejudice, the right to bring this suit at a later point in time. Now, if you had never brought it before – When you say the court segregated, it was your option, which the court blessed by entering the order, right? You decided to set these claims up. In other words, if in the course of your investigation, pre-filing, you had discovered that you didn't really have the evidence on the method claims, so you just didn't file them, you think that would be a different case for purposes of res judicata from the case before us in which you discovered that you didn't have the evidence after you filed both the apparatus and method claims? Yes, I think that would be different. Why? Because the court's saying is you can preserve this cause of action, right, to bring it to a later point in time. If you don't bring it yourself, as you've made the decision unilaterally, that certainly is not as powerful as the court's decision. I understand your point. Let me ask you one – a different question having to do with the temporal sequence of events. Let's – to make this simpler, let's just use a hypothetical. I make widgets. You accuse me of infringing your patent, and we go to judgment in a case, and the judgment is that the accused widgets don't infringe for whatever reason. Let's assume a set-aside for a minute, collateral estoppel issue preclusion. But setting that aside, could you then sue me a year later for widgets that I made after the date of the judgment in the first case, or would you be foreclosed? Well, I think you'd be foreclosed, although it is somewhat confusing because this court has said on a number of occasions is that what is decided in the case are the specific devices before the court at that particular time. And in several cases, they've said it's the plaintiff. Now, the plaintiff, as opposed to the defendant, is that the plaintiff who succeeded can then bring another suit for devices made after that point in time. Yeah, but how about if the plaintiff loses? Can you then come back? I think the answer is no. No. Okay. Even if it's actually different devices in the sense that those devices weren't in existence, but they're carbon copies of what was in existence. Now I have to come back and ask you this. What were the claims that were asserted? Assume again now. Let me just make it really simple. It was just one claim for apparatus. This court has decided that in a number of cases, and that's the case law that the lower court was attempting to. And how do you think that you would be foreclosed from bringing the second lawsuit, even though the devices, the individual devices, weren't made at the time of the judgment in the first case? That's my conclusion. Okay. But I will say that I think that there are cases which are saying something different. Oh, that are saying something different from your conclusion? Yes. With respect to the party that loses, what cases? The cases that we cited, it doesn't go off the top of my head. I don't think you cited anything that was different than that. I mean, we've got Nystrom and we've got Apex that clearly say that. Apex says that. Yes. Yes, when the plaintiff wins. Right. Right. There's no doubt about that, I don't think. But if I may just finish the answer to your question, Judge Olick, is you asked what happened and then what happened in the later case. In the later case, and there's a big difference here, understanding that in the first case, 112-6 applied to the apparatus claim. Now, in this case, although it was in one of the co-pending cases, the lower court judge has decided that the method claims are not subject to 112-6. And consequently, this is that the claims in this case, the method claims, will cover both analog to digital and digital to digital. So I think that there's a significant difference between those two causes of action. Because in one case, the claim scope was narrow, and in this case, the claim scope is broader. And I think that difference in itself is it shows that there are different causes of action and that there was no claim splitting. Okay, your time has just run out. Thank you. Thank you. Good morning. Ms. Gillis? Yes, please, the court. We're here on an equitable defense. And when you're dealing with equity, you're always concerned with the facts. And what are the facts here? The facts are that over a period of 16 years, this is the third time I'm before this court, dealing with products, which is undisputed on this appeal, are essentially the same as the products that were first accused in 1997. But have you read Apex? I have, Your Honor. All right. And doesn't that clarify what Nystrom really was all about? I don't believe it does, Your Honor, because this court has, since Young, always held, all of the cases, Young, Foster, Halco, were all dealing with subsequent conduct. All of them. And all of them said the issue is whether the subsequent conduct is essentially the same. But in these cases, they were talking about issue preclusion, were they not? No, Your Honor. In fact, in Young, they are adamant that they are talking claim preclusion. In Halco, in each of them, it is claim preclusion. But when you talk about subsequent conduct, it was still that you were still within the bounds of the claim that was actually litigated, correct? Actually, they don't even discuss that. They simply compare the conduct. Compare the product. The courts do not discuss. Compare the product. Yes. Okay. So one product was found not to infringe, and to the extent that there is no meaningful difference in that product, the conclusion later is that you can continue to make that product. Or essentially the same product, yes. And so what you're saying is Apex was just wrong? Apex is dealing with what I view as an exception to the, if you read through the cases, this court's cases have on a couple of instances noted that the restatement contemplates that you have to look carefully at whether there is some reason, for justice reasons, that you should not apply in a particular case, res judicata. And in the case of Lawler, that falls within that. What you're saying, I think, if I understand your argument and your brief, is that when an infringement action is brought, and even if that infringement action does not result in an adjudication that would give rise to issue preclusion, that nonetheless the plaintiff cannot, if the plaintiff has not gotten relief in the first case, the plaintiff cannot come back later and sue again with respect to the same devices of the same design. Same type of. When you say the same devices, it gets confusing as to whether we're talking about devices that were in existence before the first judgment versus devices that were made later but are in the same design. So let's just say the same design devices. So your argument is therefore closed. But I think you'd agree under Lawson and a variety of other standard claim preclusion cases, that's not the general rule. For example, if every spring you have land with a lake on it, every spring you open the gates to the lake and flood my land, I sue you for flooding my land, and I sue, let's say, the first year on a trespass theory, and I lose because I didn't have all the elements of trespass. The next year you flood my land again, and this time I say, now I know I should be suing you on a nuisance theory, and I do. There wouldn't be claim preclusion in that circumstance, would there, by virtue of the first loss? I think it depends. In Waller, one of the things that they made clear was that there was additional conduct. It wasn't the same conduct. And actually, Young, in discussing Waller, because Young treats Waller and yet nonetheless finds that claim preclusion can apply to subsequent conduct. Well, there's additional conduct in my case, too. You flooded my land a second time. It's very similar conduct, but it's additional conduct. Just as there is in the infringement context, right? Actually, in Waller, no, they found there was no tying. Well, okay, but my case is more like right square down Main Street of a restatement example. So I'm really looking to you to confirm what the restatement says, which is there'd be no claim preclusion in that setting. I don't know that it would say there is. There are cases where people have tried to sue again for a trespass, and they don't. They are precluded. Well, separate trespass? I believe, yeah. I think the distinction is that your initial suit is for a one trespass that basically, like a taking. It takes the entire value of your land, and you're suing for that remedy for all time, and you lose. You can't come back. But if your suit is for the particular flooding that occurred in 1978 and wasn't more globally framed than that, I think that the restatement is pretty clear on that, and I'm sure you're familiar with a lot of cases. Right, I am, and I guess in that case, it's identical, and there's been no ruling in the first case? No, you lost the first case, but not on grounds that would lead to an issue preclusion for closure. Okay, I guess, yes, you could bring in a second suit. Right, I would think so. And so the question is, what's different about this situation where the conduct has admittedly remained the same, but it's post-judgment conduct? Okay, I guess one of the places I look is this court's interpretation of Yama. This court has, in the past, had to deal with the issue of the fact that the issue of infringement is a continuing tort. And actually, in the en banc decision, Ackerman decision, the issue was laches there, and whether you had to treat each event of infringement as a new event, and so laches ran from it. And the court in that case noted that there are times when continuing tortious acts are deemed a unitary claim. And what's interesting is they cite Young for the proposition. Now, Young was dealing with a continuing course of conduct post-prior judgment, all of it was post-prior judgment, and cited that it stands for the proposition in the en banc panel of this court characterizing Young, stands for the claim preclusion applies against the same type of infringing act. What you see in Young when it discusses this is you have to take a pragmatic approach to claim preclusion. And when you've lost, you haven't been in any way barred from bringing the whole claim. You put the conduct before the court, you had an opportunity to put all the conduct before the court, and you lost. The situation we have in all the cases where subsequent conduct of any type is allowed to be revisited is where there are damages. I actually, I believe you're going to ask if I think Askus is wrong. I believe Askus' citation of Young is somewhat anomalous because it seems to be suggesting that claim preclusion can't apply to subsequent conduct as a rule, when in fact that is exactly what Young held, was that you do apply it to subsequent conduct if it is the same type of conduct. The other cases that the court cites in Aspects are dealing, as I say, with the situation where you're looking at the exception of the part of the restatement we talked about. You have to consider, were you barred from bringing whatever the relief is you're seeking? And in the case of damages, the answer is yes. And when it's a loser, it's yes and it isn't disrupting one of the primary purposes of res judicata, of claim preclusion. You're not disrupting, you're not putting, you're disrupting what Electa won. Under the analysis they're proposing, the second time we came up to this court and the court reaffirmed, yep, your conduct's not infringing. Their position is they could have turned around the next day and sued, and the very injunction that had just been vacated, seek it again under a different claim of the patent. You start your analysis of the Kessler case and several of the cases since Kessler have cited Kessler as a proposition, which leads me to wonder if what we've been talking about is more a principle, and what you're urging upon the court, is more a principle of patent law than it is a general principle of claim preclusion. Or perhaps put another way, is that there is, in the setting of patent law, perhaps a somewhat different balance of interests from what's usually at issue in sequential suits for later conduct claim preclusion cases, such as the Blossom. And I'm wondering whether the focus, and this is in Kessler, where the court focused on the notion that what you have won by winning a lawsuit as the accused infringer, is a trade right, a trade right to continue to sell, or make, or use a device of this design, as opposed to protection for the conduct retrospectively that you've engaged in. Is that a fair characterization of the Kessler line of cases? I think yes. And what I'm struggling with, obviously, is I think aspects citing the general rule of claim preclusion is, at least I thought so and continue to think so, correct as a statement of the general principle. So I'm wondering if there's an exception in a certain class of cases into which infringement, patent infringement cases fall, where we're focused more on the particular right that is obtained as a result of the first litigation, which is a right to continue conduct for the life of the patent that has been adjudicated to be non-infringement. Well, I guess it may be that it is something special. And I think one of the things that needs to be considered here, when we're dealing with this whole area and looking at a patent by its individual claims and present and past conduct, is one of the issues right now is judges regularly are requiring parties to choose which claims they'll pursue to trial. And are we inviting this, at least as to later conduct, or maybe even as to the prior conduct? They can bring another lawsuit on those other claims. A patent reflects… Well, we haven't ever addressed whether or not, as a matter of due process, you can prevent someone from ultimately asserting a claim. This is true. But when you look at the basic rules, you're asking me, does this need to be an exception to the rule? If you look at the basic rules, which they suggested from the Ninth Circuit, application of those rules would result in the same, I think, the result we're asking for. I think it does require, in effect, an accused infringer is getting a declaration that their conduct is adjudged to be non-infringing. That's the judgment that they've earned. But again, we're talking… That's completely consistent with aspects in the sense that aspects says that as it relates to the products that were before the court and that were subject to the judgment, or those that are not meaningfully different, then claim preclusion would prevent you… I'm sorry, issue preclusion would prevent you from asserting those claims again. Not claim preclusion, but issue preclusion. Issue preclusion here, though, their argument… And if the issue, and this gets down to this court's jurisprudence on collateral and issue preclusion, this court does tend, when it's dealing with issue preclusion, to parse a patent claim by claim. And so issue preclusion, they're arguing, is the issue of infringement of this patent by these products hasn't been resolved. The issue of infringement of this claim of this patent. It's basically a complete end run around the issue, I mean, the claim splitting problem. Well, not really, because there's no way… For instance, your example, which said they could come in the very next day. If they came in the next day after the judgment and tried to assert the method claim, then race judicata would have barred them from asserting any infringement of the method claim prior to the date of the judgment. That's correct. So it's not really an end run. It's because they would have lost the ability to go back. But only as damages. The injunction that just got vacated gets reinstated because now they're seeking an injunction under the method claim. Do you think it makes a difference whether injunctive relief was sought in the first case in this general kind of setting? I don't, and I think Lawler addressed it. Lawler does say that it doesn't, and I just wondered if there's… I mean, it makes a throwaway statement that it doesn't matter in this case that injunctive relief was sought. I don't think it does, Your Honor. I think the issue is, you know, that patentee is supposed to bring all of the claims and get an adjudication on all of the ones they can bring. They chose not to, and because of that, they are now at an advantage, because had they pursued those claims and gotten an adjudication, then there would be collateral estoppel. Well, you're assuming that they lost. Had they won on those, then we wouldn't be here but for a different reason. That's correct. That's correct. And I will only say that the construct that Mr. Adams did as to why those claims were dropped is not consistent with my memory. They had some serious validity problems with those claims, which they dropped them, which is the reason we frequently drop claims as we approach trials, which are the claims we think we can best preserve on both validity and infringement. But I… Now, with respect to the… Well, go ahead. I'm not going to take any more of your time. I really… As I say, every case that has ever dealt with a losing patentee has, in fact, foreclosed further litigation by that patentee, whether it's under Kessler. Asics itself said you can't split the case based on claims and then went to the subsequent issues. You've got the Hemphill case where that panel believed it was such a matter of obvious law that they didn't even publish the decision that's suing on the second claim later. You're out of time. Thank you. Okay, there was no rebuttal reserved, so the case will be submitted.